**Bryant ALLEN, Plaintiff–Appellant,**

v.

**CITY OF LOS ANGELES, Defendant,**

**and**

**Melanie Singer; Timothy Singer; Paul Beauregard; Gabriel Aid; Frank Schulz, Defendants–Appellees.**

No. 94–55560.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1995.

Decided Sept. 25, 1995.

John C. Burton, Burton & Norris, Pasadena, CA, for plaintiff-appellant.

Benjamin B. Salvaty, Hill, Farrer & Burrill, Los Angeles, CA; Mark A. Weinstein, Veatch, Carlson, Grogan & Nelson, Los Angeles, CA; Drew Antablin, Cheong & Denove, Los Angeles, CA; and Thomas A. Blake, Deputy Attorney General, Los Angeles, CA, for defendants-appellees.

Before: DAVID R. THOMPSON, LEAVY and TROTT, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

This appeal arises from the now infamous "Rodney King incident" of March 3, 1991. Plaintiff-appellant Bryant Allen was a passenger in Rodney King's car when it was pulled over by police officers. King had been speeding and failed to obey police directions to stop. During the time King was being beaten, Allen was forced at gunpoint to lie on the ground, handcuffed, frisked, placed in a police car, and questioned. As soon as the officers determined Allen was not involved in any wrongdoing, a period which lasted no more than 24 minutes, he was released.

Allen sued the defendants-appellees Officers Paul Beauregard, Timothy Singer, Melanie Singer, Gabriel Aid and Frank Schulz (collectively "defendants") under 42 U.S.C. § 1983, claiming they violated his rights under the Fourth Amendment by arresting him without probable cause and using excessive force to effectuate the arrest.[1] None of these officers was involved in the criminal action related to the beating of Rodney King. *See United States v. Koon,* 34 F.3d 1416 (9th Cir.1994), *petition for cert. filed* April 12, 1995.

The district court granted summary judgment in favor of Officers Aid, Schulz and Melanie Singer, concluding they were entitled to qualified immunity because they reasonably could have believed their actions did not violate Allen's civil rights. As to Officers Beauregard and Timothy Singer, the district court granted partial summary judgment on Allen's unlawful arrest claims based on qualified immunity, but determined that triable issues of fact precluded summary judgment for these defendants on his excessive force claims. The court also denied Allen's motion for summary adjudication of issues, in which Allen had requested a determination that he had been subjected to an arrest, that there was no probable cause for his arrest, and that the defendants were not entitled to qualified immunity.

Allen then dismissed his excessive force claims against Officers Beauregard and Timothy Singer in order to "manufacture" a final, appealable judgment with respect to his false arrest claims. *See Cheng v. Commissioner,* 878 F.2d 306, 311 (9th Cir.1989) (plaintiff can avoid finality problem associated with appealing an adverse partial summary judgment ruling by voluntarily dismissing the remainder of his claims and then appealing the partial summary judgment); *Dannenberg v. Software Toolworks, Inc.,* 16 F.3d 1073, 1076 (9th Cir.1994). Allen now appeals the district court's orders regarding his false arrest claims.

We have jurisdiction under 28 U.S.C. § 1291. We conclude that Allen was not arrested but rather was subjected to a legitimate *"Terry"* stop. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). His constitutional rights were not violated, and we affirm the district court's orders on this basis. *Cf. Alexander v. County of Los Angeles,* 95 Daily Journal D.A.R. 11715 (9th Cir. Aug. 29, 1995) (officers who handcuffed and placed suspects of armed bank robbery in police car, holding them for forty-five minutes to one hour entitled to qualified immunity because they "reasonably could have believed their conduct was lawful in light of clearly established law and the totality of the circumstances."). *Id.* at 11716.

## FACTS

Somewhat after midnight on March 3, 1991, Allen and a friend, Freddie G. Helms, were riding in a white Hyundai driven by Rodney King on the 210 ("Foothill") Freeway in Los Angeles. All three men were intoxicated.

California Highway Patrol (CHP) Officers Timothy Singer and Melanie Singer were on routine patrol when they observed King's vehicle approach from behind at a high rate of speed in excess of the posted speed limit. As the Hyundai came abreast of the Singers'

---

1. Allen also sued the City of Los Angeles, its Police Department, and other individual officers. The claims against these defendants were all either settled or dismissed.

patrol car, it braked suddenly to match pace with the police vehicle.

The officers left and then reentered the freeway to determine whether, in their absence, the Hyundai would resume speeding. Once they had confirmed that the car had indeed resumed speeding, the officers initiated pursuit to effect a routine traffic stop. They activated the patrol car's flashing red lights and siren, and shined a spotlight through the Hyundai's rear window to signal the vehicle to stop. Instead of pulling over, however, the Hyundai exited the freeway and fled from the CHP unit on surface streets.

The Singers continued in pursuit. A high-speed chase ensued, during which the driver of the Hyundai ignored several stop signs and red traffic lights, but stopped at others. The officers observed the rear passenger, later identified as Allen, acknowledge the pursuit by repeatedly looking over his shoulder and raising his hands. The passenger also appeared to be speaking to the driver. The officers transmitted directions over the CHP unit's loudspeaker instructing the driver to stop, but these orders were ignored. During the chase, the CHP radio dispatcher informed the Singers that the Hyundai's license plate had been checked and the vehicle had not been reported stolen. The dispatcher also told the Singers the car was registered to a Ms. Kandyce Barnes.

Eventually, after leading the chase over approximately eight miles of freeway and city streets, the Hyundai came to a stop near an entrance to the Hansen Dam Recreation Area. The location was dark and known to police as a high crime area frequented by drug dealers. By that time, several Los Angeles Police Department (LAPD) units and one Los Angeles Unified School District (LAUSD) unit arrived at the scene. They had joined in the pursuit in response to the Singers' request for backup assistance.

After the Hyundai stopped, the officers approached the car with their guns drawn. The occupants were ordered to get out and lie on the ground in a prone position. King got out of the car but failed to comply with the officers' demands that he lie down. The events which followed leading to the beating and arrest of King are well-publicized. *See*

*Koon*, 34 F.3d at 1424–25. For purposes of this appeal, the relevant facts are that King was non-compliant and combative.

Both Allen and Helms got out of the Hyundai from the passenger side and lay on the ground as instructed. While Officer Beauregard pointed a gun at Allen's head, another officer handcuffed Allen and frisked him for weapons. Officer Melanie Singer inspected the inside of the Hyundai and determined that, although the vehicle contained no weapons, it did contain a bottle of malt liquor which had been opened and largely consumed. She then frisked Allen again, assisted him to his feet, and conducted a pat-down of his frontal area, which had not been accessible while he was lying on the ground.

Officer Melanie Singer then questioned Allen regarding King's failure to pull over and stop. She also asked him whether he had been drinking and whether he had any identification. Although Allen was largely cooperative, his answers were incomplete. He did not give his full name when asked and could not provide an explanation for King's attempts to flee from the officers. He also admitted that he had been drinking and did not have identification.

Meanwhile, Officers Schulz and Aid arrived on the scene. At the direction of Officer Timothy Singer, Officer Aid removed Allen's handcuffs and placed a new set of handcuffs on him. He then led Allen across the street to a CHP vehicle and questioned him there.

At no point was Allen either informed of his *Miranda* rights or told he was under arrest. Allen stated he did not know why King had refused to pull over, that he had told King to stop numerous times, but King would not listen. After a period which according to Allen lasted no more than 24 minutes, the officers determined Allen was not involved in any wrongdoing and he was released.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127,

1130 (9th Cir.1994). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the district court correctly applied the relevant substantive law. *Id.*

## DISCUSSION

Allen does not dispute that, based on the speed at which King was travelling and his failure to pull over, the defendants had reasonable suspicion to make an investigatory *Terry* stop. *See Terry,* 392 U.S. at 1, 88 S.Ct. at 1868. He contends, however, that the methods the defendants used to detain him converted the initially lawful *Terry* stop into a full-fledged arrest for which probable cause was required, but was lacking.

In support of this contention, Allen relies on *United States v. Delgadillo–Velasquez,* 856 F.2d 1292 (9th Cir.1988), and *United States v. Del Vizo,* 918 F.2d 821 (9th Cir. 1990), in which we held that when police officers approached the defendants with weapons drawn, handcuffed them, and required them to lie prone on the ground, they subjected the defendants to an arrest which had to be based on probable cause, not a *Terry* stop which could be supported merely by reasonable suspicion. *Del Vizo,* 918 F.2d at 824–25; *Delgadillo–Velasquez,* 856 F.2d at 1295. Allen also relies on *United States v. Ricardo D.,* 912 F.2d 337 (9th Cir.1990), in which we held that "isolating an unarmed, compliant juvenile in the back of a police car was unnecessarily coercive, and thus transformed the investigatory stop into an arrest." *Id.* at 340. He argues these cases establish a brightline rule that the methods used to detain him, taken together, amounted to an arrest.

■ There is, however, "no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." *United States v. Parr,* 843 F.2d 1228, 1231 (9th Cir.1988) (quoting *United States v. Hatfield,* 815 F.2d 1068, 1070 (6th Cir.1987)). The Supreme Court has clearly stated that "[m]uch as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over

rigid criteria." *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). Therefore, whether an arrest has occurred depends on all the surrounding circumstances, and each case must be decided on its own facts. *Parr,* 843 F.2d at 1231.

■ Pointing a weapon at a suspect, ordering him to lie on the ground, handcuffing him, and placing him for a brief period in a police vehicle for questioning—whether singly or in combination—does not automatically convert an investigatory detention into an arrest requiring probable cause. *United States v. Sanders,* 994 F.2d 200, 206 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 408, 126 L.Ed.2d 355 and —— U.S. ——, 114 S.Ct. 608, 126 L.Ed.2d 572 (1993). *See Sharpe,* 470 U.S. at 683, 105 S.Ct. at 1574 (no arrest when defendant detained 20 minutes for questioning); *Parr,* 843 F.2d at 1231 (placing defendant in patrol car did not constitute an arrest); *United States v. Alvarez,* 899 F.2d 833, 838 (9th Cir.1990) (no arrest when defendant ordered out of car at gunpoint), *cert. denied,* 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991); *United States v. Buffington,* 815 F.2d 1292, 1300 (9th Cir. 1987) (no arrest when defendants "forced from their car and made to lie down on wet pavement at gunpoint"); *United States v. Taylor,* 716 F.2d 701 (9th Cir.1983) (no arrest when suspect stopped at gunpoint, ordered to lie face down in ditch, handcuffed and frisked); *United States v. Jacobs,* 715 F.2d 1343, 1345–46 (9th Cir.1983) (no arrest when suspect removed from car at gunpoint and ordered to prone-out on ground); *United States v. Bautista,* 684 F.2d 1286, 1289–90 (9th Cir.1982) (handcuffing suspect did not convert valid *Terry* stop into arrest), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446, 447 (1983). *See also Courson v. McMillian,* 939 F.2d 1479, 1492 (11th Cir. 1991) (no arrest when suspect ordered out of car at gunpoint, made to lie on ground, and detained for 30 minutes).

■ Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations. *See Jacobs,* 715 F.2d at 1345–46

("[T]he use of force in making a stop will not convert the stop into an arrest 'if it occurs under circumstances justifying fears for personal safety.'") (quoting *United States v. Beck,* 598 F.2d 497, 501 (9th Cir.1979)). Police officers also "need not avail themselves of the least intrusive means of responding to an exigent situation." *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). "The relevant inquiry is always one of reasonableness under the circumstances." *Sanders,* 994 F.2d at 206. *See also Terry,* 392 U.S. at 20, 88 S.Ct. at 1879 (The question is "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.").

*Delgadillo–Velasquez, Del Vizo* and *Ricardo D.* are not to the contrary. There, the methods of detention employed by the police were found to constitute an arrest because, in each case, the defendant was fully cooperative, and there was no evidence suggesting he was dangerous or that safety considerations required such intrusive methods of restraint. *Del Vizo,* 918 F.2d at 825; *Ricardo D.,* 912 F.2d at 340.

In this case, by contrast, the police had been led on a high-speed chase over eight miles of freeway and city streets. They did not know why the Hyundai was speeding, why it did not initially pull over, and why it ultimately came to a stop in an area known for crime. Although the officers were informed during the course of the chase that the Hyundai had not been reported stolen, they were also told the vehicle was registered to a woman and they could see the occupants of the car were all male. Given these circumstances, it was entirely reasonable for the officers to conclude that, perhaps, the car had in fact been stolen but its owner had not yet reported the theft.

Allen contends he is not responsible for King's speeding and leading the officers on a chase, because he attempted to persuade King to pull over and stop. This is irrelevant. The police could not have known the extent of Allen's involvement until after they questioned him. And, although Allen and Helms complied with the officers' instructions once the Hyundai was stopped, King was combative and uncooperative. Allen is not responsible for King's behavior, but the police were responding to the situation as a whole and their treatment of Allen cannot be analyzed in a vacuum. *See United States v. Wiga,* 662 F.2d 1325, 1332 (9th Cir.1981) ("It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from the defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance.") (quoting *United States v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir.1971)), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982); *see also Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323, 1326–27 (9th Cir.1995) (for their safety, officers may order passenger out of car during routine traffic stop).

For his part, Allen was intoxicated, had no identification, and could not provide an explanation for King's refusal to stop. The stop occurred in a high crime area, at night, after a lengthy high-speed chase and the officers could not initially rule our the possibility the car was stolen. Also, as we have previously stated, one of the occupants (King) was noncompliant and combative.

We conclude that, considering all of the circumstances, pointing a gun at Allen, forcing him to lie on the ground, handcuffing him, and detaining him in a police vehicle— all in a period not exceeding 24 minutes during which the owner of the Hyundai was contacted to determine whether the car had been stolen—was not unreasonable for a *Terry* stop and did not amount to an arrest.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of the defendants. Allen was subjected to a *Terry* stop, not an arrest. His Fourth Amendment right to be arrested only upon probable cause was not violated.

**1058**

AFFIRMED.[2]

---

**2.** We deny defendant Timothy Singer's request for an award of attorney fees. A prevailing defendant in a civil rights action is not entitled to attorney fees under 42 U.S.C. § 1988 merely because he prevails on the merits of the suit. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994). Allen's action was not "unreasonable, frivolous, meritless, or vexatious." *Id.* (quoting *Roberts v. Spalding,* 783 F.2d 867, 874 (9th Cir), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986)).