308 F.3d 987
 Francisco GALLEGOS, Plaintiff-Appellant,
v.
CITY OF LOS ANGELES; Bernard Parks, individually and as Chief of Police; Young C. Honor, Officer; Mark Cohan, Officer; Waihong Wong, Sgt., all individually and as peace officers, Defendants-Appellees.
 No. 01-56021.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 2002.
 Filed October 11, 2002.
 
 Ellen Hammill Ellison, Los Angeles, CA, for the plaintiff-appellant.
 Janet G. Bogigian, Deputy City Attorney, Los Angeles, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Manuel L. Real, District Judge, Presiding. D.C. No. CV-00-10556-R/AJWx.
 Before: ALARCÓN, SILVERMAN, and RAWLINSON, Circuit Judges.
 Opinion by Judge SILVERMAN; Dissent by Judge RAWLINSON.
 SILVERMAN, Circuit Judge.
 
 
 1
 Responding to a 911 call and mistakenly believing Francisco Gallegos to be a burglary suspect, police pulled him over, ordered him out of his truck at gunpoint, handcuffed him, and placed him in the back of a patrol car. Police then brought Gallegos to the scene of the reported incident, where it was confirmed that he was not the suspect. He was returned to his truck and released less than an hour after he was initially detained. Gallegos sued, alleging a violation of his Fourth Amendment rights, and the district court granted summary judgment for defendants. We affirm. We hold that, given what the police were told about the man they were looking for, detaining Gallegos for forty-five to sixty minutes to ascertain whether he was the individual wanted for attempted burglary fell within the bounds of a permissible investigatory stop.
 
 I. BACKGROUND
 
 2
 On July 4, 1999, around 6:15 p.m., Jessica Morales called 911 to report that her father was trying to break into her house at 4357 Melbourne Ave., Los Angeles. Morales told police she had obtained a restraining order against her father, whom she described as a Hispanic male wearing a red shirt and blue pants. The Los Angles Police Department classified the call as a burglary and dispatched officers Stephen Cornell and William Carey to the area in a helicopter.
 
 
 3
 Across the street from where Morales lived, at 4356 Melbourne Ave., Francisco Gallegos was leaving his daughter's house just as the police helicopter approached. Gallegos, who is Hispanic, wore a red shirt and tan shorts. He walked to the curb, got in his pickup truck, and drove off. From the air, Cornell and Carey saw Gallegos get in his truck and thought that he was Morales's father. They requested that officers on the ground stop and detain him.
 
 
 4
 LAPD officers Young Honor and Mark Cohan responded and pulled Gallegos over a few miles away. They ordered him from his truck at gunpoint, handcuffed him, and placed him in the back of the police car. Gallegos obeyed all police commands and cooperated fully. Honor and Cohan neither asked Gallegos who he was nor examined his license or registration to confirm his identity. All Honor and Cohan knew was that a Hispanic man in a red shirt (they had apparently not been told about the blue pants) had forcibly tried to enter a home in violation of a restraining order, and they were told by the helicopter officers that Gallegos was believed to be that person.
 
 
 5
 Honor and Cohan brought Gallegos back to Melbourne Ave., where a neighbor confirmed that he was not the man who was trying to break into the Morales home. Gallegos's family emerged from their residence and, seeing him handcuffed and in the back of a police car, became upset and demanded his release. Gallegos was uncuffed, and Honor and Cohan's supervisor, Sergeant Waihong Wong, came to the scene to assist and to discuss the incident with Gallegos's family. Forty-five minutes to an hour after he was initially detained, Gallegos was taken back to his truck and released.
 
 
 6
 Gallegos sued the City of Los Angeles, Police Chief Bernard Parks, and Officers Cohan, Wong, and Honor over his detention. He alleged deprivation of constitutional rights under 42 U.S.C. § 1983 and state law claims. Gallegos moved for summary judgment, relying primarily on admissions by Cohan and Honor obtained during discovery in which they admitted to having "arrested" Gallegos. Defendants successfully moved to withdraw these admissions, then moved for summary judgment themselves. The district court granted defendants' summary judgment motion, holding that Gallegos's detention was supported by reasonable suspicion and did not exceed the limits imposed by the Fourth Amendment. Gallegos now argues that the district court erred in (1) holding that Gallegos's detention was legal, and (2) allowing defendants to withdraw the admissions.
 
 II. JURISDICTION AND STANDARD OF REVIEW
 
 7
 We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. Weiner v. San Diego County, 210 F.3d 1025, 1028(9th Cir.2000). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the district court correctly applied the relevant substantive law. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir.1995). A trial court's evidentiary rulings in the context of summary judgment are reviewed for an abuse of discretion. Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1263 (9th Cir.2000).
 
 III. ANALYSIS
 A. Legality of Gallegos's Detention
 
 8
 "The Fourth Amendment prohibits `unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). There is no question that Gallegos's detention by Honor and Cohan amounted to a seizure for Fourth Amendment purposes, as a reasonable person in his situation would not have felt free "to disregard the police and go about his business." California v. Hodari, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
 
 
 9
 If Gallegos's detention was an arrest, the Constitution requires that the arresting officers have probable cause to justify their actions. The parties apparently agree that Honor and Cohan lacked probable cause to arrest Gallegos. Defendants maintain, however, that while Gallegos's detention cannot be sustained as a full-fledged arrest, it was a valid investigatory stop based on reasonable suspicion. "Terry [v. Ohio] created a limited exception to th[e] general rule" that police detentions require probable cause, wherein "certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime." Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion). Under Terry and its progeny, the Fourth Amendment allows police to conduct a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions. The reasonable suspicion standard "is a less demanding standard than probable cause," and merely requires "a minimal level of objective justification." Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); see also Arvizu, 122 S.Ct. at 750.
 
 
 10
 Gallegos does not dispute that, at the time he was detained, Honor and Cohan possessed knowledge sufficient to satisfy the reasonable suspicion standard. The only issue to be resolved is whether the actions of the police exceeded the bounds of Terry and its progeny. If this was an investigatory stop, it was legal, because it was justified by reasonable suspicion; if it was an arrest, it was illegal, because the police lacked probable cause to make an arrest.
 
 
 11
 There is "no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." United States v. Parr, 843 F.2d 1228, 1231 (9th Cir.1988) (quoting United States v. Hatfield, 815 F.2d 1068, 1070(6th Cir. 1987)). Rather, whether a police detention is an arrest or an investigatory stop is a fact-specific inquiry, Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996), guided by the general Fourth Amendment requirement of reasonableness, Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). This inquiry requires us to consider "all the circumstances surrounding the encounter" between the individual and the police, Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), "by evaluating not only how intrusive the stop was, but also whether the methods used [by police] were reasonable given the specific circumstances," Lambert, 98 F.3d at 1185 (emphasis in original).
 
 
 12
 Gallegos relies on numerous factors in arguing that his detention went beyond a valid investigatory stop. Among them are the fact that he was ordered from his truck at gunpoint, that he was handcuffed, that he was put in the back of a patrol car, that he was detained for between forty-five minutes and an hour, and that less intrusive options were available to police. Gallegos focuses on each of these facts in isolation, citing to cases where the presence of similar factors contributed to our conclusion that an arrest had taken place. See, e.g., Lambert, 98 F.3d at 1189-92 (detention deemed an arrest, in part, because suspects were handcuffed, placed in patrol cars, police had guns drawn, etc.). However, the Supreme Court has rejected what it called "this sort of divide-and-conquer" approach to Terry. Arvizu, 122 S.Ct. at 751. The facts of Gallegos's detention must be viewed in the context of the totality of the circumstances, as "the scope of the intrusion permitted [by the Fourth Amendment] will vary to some extent with the particular facts and circumstances of each case." Royer, 460 U.S. at 500, 103 S.Ct. 1319 (plurality opinion). We look at the situation as a whole; we do not isolate each fact "in a vacuum," Allen, 66 F.3d at 1057. "There is clearly no mechanical checklist to distinguish between Terry stops and formal arrest or the equivalent of arrest." Parr, 843 F.2d at 1231.
 
 
 13
 The whole point of an investigatory stop, as the name suggests, is to allow police to investigate, in this case to make sure that they have the right person. For police to draw their guns in ordering Gallegos from the truck, when unsure if he was armed; for police to handcuff Gallegos in the back of a 9 patrol car, when unsure of who he was; and for police to bring him back to Melbourne Ave. — this was not, under the circumstances, an unreasonable way of finding out if Gallegos was the person they were looking for. Our cases have made clear that an investigative detention does not automatically become an arrest when officers draw their guns, see, e.g., United States v. Buffington, 815 F.2d 1292, 1300(9th Cir.1987) (no arrest when defendants were forced from their car and made to lie down on the pavement at gunpoint), use handcuffs, see, e.g., Allen, 66 F.3d at 1056-58 (defendant ordered to exit car and lie on the ground, then handcuffed with gun pointed at his head, ultimately determined not to be an arrest), or place a suspect in the back of a patrol car, see Parr, 843 F.2d at 1229-32 ("Certainly, there is no per se rule that detention in a patrol car constitutes an arrest."). Viewed in context, Cohan and Honor's conduct was reasonable. Of course, it is unfortunate that an innocent man, in the wrong place at the wrong time, was inconvenienced for up to an hour. But by the same token, this investigative stop worked as it should. The detention was brief, calculated solely to make sure they had the right man, and resulted in Gallegos's prompt vindication. "Terry accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk" as well. Wardlow, 528 U.S. at 126, 120 S.Ct. 673. Courts cannot prevent mistakes such as this from taking place; we can only ensure that mistakes are kept to a minimum by requiring officers to act reasonably, for articulable reasons, and not on a hunch.
 
 
 14
 Gallegos makes much of the fact that his detention lasted forty-five minutes to an hour. However, "our cases impose no rigid time limitation on Terry stops." United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). While the length of Gallegos's detention remains relevant, more important is that Honor and Cohan's actions did "not involve any delay unnecessary to the[ir] legitimate investigation." Id. at 687, 105 S.Ct. 1568. "If the purpose underlying a Terry stop — investigating possible criminal activity — is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in Terry [v. Ohio]." Michigan v. Summers, 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Critical to our conclusion that Gallegos was not arrested is that "the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the [suspect]." United States v. Torres-Sanchez, 83 F.3d 1123, 1129 (9th Cir.1996) (citations and internal quotation marks omitted). Under the circumstances, which included driving to and from Melbourne Ave. and awaiting the arrival of their supervisor to assist in dealing with the family, forty-five to sixty minutes was not an unreasonable length of time for Honor and Cohan to have detained Gallegos, especially since he was neither handcuffed nor in the patrol car the whole time.
 
 
 15
 The fact that officers Honor and Cohan admitted during discovery to having "arrested" Gallegos does not alter our legal conclusion that their actions were objectively reasonable under the circumstances. Whether or not Gallegos's detention on July 4, 1999 was an arrest or an investigatory stop depends on what the officers did, not on how they characterize what they did. Cf. Royer, 460 U.S. at 507, 103 S.Ct. 1319("[T]he fact that the [police] officers did not believe there was probable cause ... would not foreclose the State from justifying Royer's custody by proving probable cause and hence removing any barrier to relying on Royer's consent to search.") (plurality opinion). And we conclude that what Honor and Cohan did in detaining Gallegos was reasonable, and that his detention was therefore a valid investigatory stop.
 
 
 16
 Perhaps by looking at Gallegos's license and registration, or by contacting officers Cornell and Carey in the helicopter, this case of mistaken identity could have been resolved sooner. Perhaps not. The argument that there were other ways that Honor and Cohan could have proceeded misses the point. The Fourth Amendment does not mandate one and only one way for police to confirm the identity of a suspect. It requires that the government and its agents act reasonably. See Sharpe, 470 U.S. at 687, 105 S.Ct. 1568("The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it."). When Gallegos had denied that he was Jessica Morales's father, did Honor and Cohan take him to the police station, book him, and lock him in a cell? Did they detain him indefinitely on the highway, handcuffed in the back of a patrol car, for a prolonged interrogation? Did they wait for other police personnel to become available to bring an identifying witness to them? No, they immediately took Gallegos to Melbourne Ave. to verify who he was, a procedure that was virtually certain to quickly clear an innocent man — which is just what it did.
 
 
 17
 In sum, we agree with the district court that the actions of Honor and Cohan were objectively reasonable under the totality of the circumstances. We therefore hold that Gallegos's detention did not exceed the bounds of a valid investigatory stop, and we affirm the district court's grant of summary judgement for defendants.
 
 B. Withdrawal of Defendants' Admissions
 
 18
 During discovery, Honor and Cohan responded to Gallegos's request for admissions by admitting that they had arrested him. The district court subsequently permitted defendants to withdraw these admissions. Gallegos argues that this was an abuse of discretion.
 
 
 19
 Federal Rule of Civil Procedure 36(b) provides that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission," and allows "the court [to] permit withdrawal [of an admission] when [1] the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party...." The first prong of this test, which essentially asks if allowing the withdrawal will aid in the resolution of the case, favors allowing defendants to withdraw the admissions. One of the issues in this case is whether defendants' acts constituted an arrest as a matter of law. The officers' subjective characterization of their actions as an arrest — which, as discussed earlier, has no bearing on our legal conclusion that, under the circumstances, their actions did not amount to an arrest — confuses this issue. Allowing Honor and Cohan's admission to stand confuses our legal conclusion, which is the subject of the preceding section, with the officers' legal characterization of what took place. Withdrawal of the admissions thus subserves the presentation of the merits in this action.
 
 
 20
 Moreover, Gallegos is unable to show prejudice resulting from the district court's ruling. "The prejudice contemplated by Rule 36(b) ... relates to the difficulty a party may face in proving its case," including problems "caused by the unavailability of key witnesses," or "the sudden need to obtain evidence with respect to the questions previously deemed admitted." Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir.1995) (quoting Brook Village N. Assocs. v. General Elec. Co., 686 F.2d 66, 70(1st Cir.1982)). The only prejudice Gallegos claims is that he was unable to depose Jessica Morales in order to establish whether Cohan and Honor tried to verify Gallegos's identity with her when they returned to Melbourne Ave. However, we assume for summary judgment purposes, and defendants explicitly admit, that it was Morales's neighbor who identified Gallegos. Whether or not police attempted to contact Morales, or instead relied on an independent third-party, has no bearing on our conclusion that Honor and Cohan acted reasonably or that Gallegos's detention was a valid investigatory stop. We therefore hold that the district court acted within its discretion in granting defendants' motion to withdraw the admissions.
 
 
 21
 AFFIRMED.
 
 RAWLINSON, Circuit Judge, Dissenting:
 
 22
 I agree with the majority that in deciding whether police conduct constitutes an investigatory stop or an arrest, we evaluate the intrusiveness of the stop and the reasonableness of the methods used in the specific circumstances. Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir.1996). However, we part company on whether the methods used in the specific circumstances of this case were reasonable.
 
 
 23
 In assessing the reasonableness of the officers' actions, "[t]he critical inquiry is whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." United States v. Torres-Sanchez, 83 F.3d 1123, 1129 (9th Cir.1996) (citations and internal quotation marks omitted) (emphasis added).
 
 
 24
 In seeking to "confirm or dispel their suspicions quickly," the officers elected to transport Mr. Gallegos to the scene of the reported incident rather than simply: (1) checking his identification to determine if his name matched that of the suspect; (2) questioning Mr. Gallegos regarding the reported incident; or (3) contacting dispatch to obtain additional identifying information regarding the suspect.
 
 
 25
 The majority relies upon United States v. Buffington, 815 F.2d 1292, 1300 (9th Cir.1987); Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir.1995); and United States v. Parr, 843 F.2d 1228, 1231 (9th Cir.1988) to support its conclusion that the officers effectuated a reasonable investigatory stop. However, those cases address materially different circumstances. In Buffington, the police had been alerted that the defendants planned to rob a bank and that one of the defendants would be dressed as a woman. Subsequently, the police observed the defendants drive slowly past the bank, with one defendant leaving the vehicle and entering a store from which he could view the bank. From a photograph, one of the officers identified the defendant who was dressed as a woman. The defendants were then arrested. See Buffington, 815 F.2d at 1295. The detailed information with which the officers in Buffington were armed is a far cry from the sketchy, uncorroborated data relied upon by the officers in this case to support a claim of reasonableness.
 
 
 26
 Allen is similarly inapposite. Mr. Allen was detained by virtue of the fact that he was a passenger in a speeding car, the driver of which refused to heed repeated instructions from the police to stop the vehicle. When the driver eventually stopped, he did so in a dark location "known to police as a high crime area frequented by drug dealers." Allen, 66 F.3d at 1055. In contrast, Mr. Gallegos was not breaking any laws when confronted by the officers, and was completely cooperative at all times.
 
 
 27
 Finally, the circumstances in Parr also differ markedly from those we now consider. In Parr, the detaining officer had previously cited the defendant for driving while his license was suspended and had recently checked the defendant's record. Under these circumstances, we unsurprisingly expressed our belief that "there was probable cause for the officer to believe that [defendant] was violating the law by driving while suspended." Parr, 843 F.2d at 1230. Interestingly, in Parr, we endorsed the concept of a "standard police identification process," including a request for production of a driver's license, id., a concept which the majority apparently eschews.
 
 
 28
 I am acutely aware of our obligation to consider the total circumstances of each case in making a determination of reasonableness. However, even taken in the aggregate, the circumstances of this case defy characterization as an investigatory stop that was likely to confirm or dispel the officers' suspicions quickly. See Torres-Sanchez, 83 F.3d at 1129.
 
 
 29
 Accordingly, I respectfully dissent.