

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-28-2006

# Woodlen v. Jimenez

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3143

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Woodlen v. Jimenez" (2006). *2006 Decisions*. Paper 1376.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1376

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO: 05-3143
_____

EARL WOODLEN, JR.,
Appellant
vs.

PHW S. JIMENEZ; SGT. P. BURKE , COUNTS 122
_____

On Appeal From the United States District Court
For the District of Delaware
(D.C. Civ. No. 01-cv-00225)
District Judge: Honorable Joseph J. Farnan, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)March 21, 2006
Before: FISHER, ALDISERT AND WEIS, CIRCUIT JUDGES

(Filed: March 28, 2006)

_____

OPINION
_____

PER CURIAM.

Appellant Earl Woodlen appeals from the District Court's order granting

the Defendants' motion for summary judgment in a suit brought under 42 U.S.C. § 1983.

For the reasons that follow, we will affirm the District Court's order.

I.

The parties are familiar with the facts of this case, thus, we only briefly recite them here. In 1999, Officers Jimenez and Counts observed a late model vehicle with dealer tags. They claim that in their experience, such vehicles are often stolen. The Officers pulled behind the vehicle and observed Woodlen leave his car, pick something up from the street, and then return to his still running vehicle. Finding this suspicious, the Officers followed Woodlen through a parking lot until he finally parked on the street.

The Officers aver that they then activated their lights, at which point Woodlen "exited his vehicle and immediately approached Officers Counts and Jimenez, shouting profanity." Defs. Mot. Summ. J. at ¶ 5. Woodlen claims that he did not immediately begin shouting. Rather, he got out of his car and walked in the Officers' direction toward a state medical center to pick up free condoms. The Officers told him to return to his vehicle. Woodlen complied, but did not get inside the car. Counts and Jimenez then performed a <u>Terry</u> frisk. Although no weapons were found, Woodlen was handcuffed and placed in the police cruiser. He continued to ask what he had done wrong, often using profanity. The Officers radioed the Wilmington Data Center to run a check on Woodlen's vehicle. The stolen vehicle report revealed that the car was not stolen, and Woodlen was released. However, the Officers issued him a parking ticket and a citation for disorderly conduct. Both were eventually dismissed.

Woodlen then brought the current action against both Officers and Sergeant Burke, who took Woodlen's citizen complaint at the precinct office. Woodlen claimed

2

that the initial stop was not supported by reasonable suspicion and that the Officers had

no probable cause to place him under arrest. He also asserted a federal claim of malicious

prosecution along with several state causes of action. The District Court found that even

if Woodlen's constitutional rights were infringed, the Officers are entitled to qualified

immunity. Woodlen appealed. The Appellees then moved for summary affirmance. We

directed the parties to submit briefs. Both parties complied. The appeal is now ripe for

review.[1]

## II.

The Appellees understand Woodlen's short informal appellate brief to raise

two issues. The first, that the District Court improperly granted summary judgment after

denying the Defendants' previous motion, and second, that the order granting summary

judgment was in error. We agree with the Appellees that the District Court reserved the

right to reconsider its 2003 summary judgment order and alter its determination. See Fed.

R. Civ. P. 54(b); United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973).[2]

Turning to Woodlen's second argument, an official is not entitled to

qualified immunity if he has violated a constitutional right and that right is clearly

established, meaning "it would be clear to a reasonable officer that his conduct was

---

[1] We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and exercise de novo review. See Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005).

[2] Although an order denying qualified immunity is immediately appealable under the collateral order doctrine, see Mitchell v. Forsyth, 472 U.S. 511, 528-30 (1985), it does not adjudicate all of the claims with respect to all of the parties.

3

unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). We agree with the District Court that with respect to the initial stop and length of the detention, even assuming that the Officers did not have reasonable suspicion, "officers of reasonable competence could disagree on this issue, [and] immunity should be granted." In re City of Philadelphia Litig., 49 F.3d 945, 961-62 (3d Cir. 1995) (citation omitted); see also Terry v. Ohio, 392 U.S. 1 (1968) (reasonableness of the stop); United States v. Sharpe, 470 U.S. 675, 685-86 (1985) (length of detention).

However, we conclude that Woodlen raises an additional issue: whether the use of handcuffs and his placement inside the squad car was justified by the circumstances. The use of handcuffs and other physical restraints does not necessarily transform an investigatory seizure into a formal arrest requiring probable cause. See Baker v. Monroe Township, 50 F.3d 1186, 1193 (3d Cir. 1995) (citing numerous examples). However, the use of restraint must be reasonable under the totality of the circumstances. See id.; Torres v. United States, 200 F.3d 179, 185-86 (3d Cir. 1999) (finding use of drawn guns and handcuffs reasonable during the course of a warranted search); see also Gallegos v. City of Los Angeles, 308 F.3d 987, 991 (2002) (finding the use of handcuffs and drawn guns reasonable on a man mistaken for a suspect).

The facts regarding Woodlen's handcuffing and detention are not significantly disputed. The parties however disagree as to how Woodlen's conduct should be interpreted. Irrespective of whether the conduct is deemed "threatening"

4

Woodlen yelled at and angrily questioned the Officers. Even assuming that this conduct is not sufficient to justify the use of handcuffs and confinement during an investigatory stop, we cannot conclude that the right to be free from physical restraint under these circumstances was clearly established.

The Supreme Court has not addressed a case dealing with closely parallel facts and neither have we. In <u>Baker</u>, we found evidence that officers executing a warrant pointed guns at and handcuffed members of a family walking up to a house for a social visit sufficient to defeat a summary judgment motion. 50 F.3d at 1193. It was also conclusively established that the family presented no evident threat to the officers' safety. <u>Id.</u> Here, the Officers could reasonably conclude that Woodlen's conduct could have been threatening, and unlike in <u>Baker</u>, guns were never involved. Although Woodlen argues that he was physically injured, a fact not present in <u>Baker</u>, we simply cannot say that a reasonable officer would have clearly known that handcuffing Woodlen violates the Fourth Amendment. Thus, the Officers are entitled to qualified immunity.

For the foregoing reasons, we will affirm the order of the District Court.