**Bernard MILLER, Plaintiff—Appellee,**

v.

**CITY OF SIMI VALLEY, Defendant,**

and

**Dan Swanson; et al., Defendants— Appellants.**

No. 07–56694.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 2009.

Filed April 29, 2009.

---

———

Dan Lawton, Esquire, Lawton Law Firm, San Diego, CA, for Plaintiff–Appellee.

Karen K. Peabody, Esquire, Nye Peabody & Stirling, Santa Barbara, CA, for Defendants–Appellants.

Before: KLEINFELD, BEA and IKUTA, Circuit Judges.

### MEMORANDUM *

Simi Valley police officers Dan Swanson, Christopher Hahesy, Francis Panza, Matt Buchannan and William Lappin (collectively, officers) appeal the district court's order denying their summary judgment motion based on qualified immunity. We have jurisdiction to decide whether the officers are entitled to qualified immunity as a matter of law, viewing the facts in the light most favorable to Miller. *See Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1059–60 (9th Cir.2006); *see also Behrens v. Pelletier,* 516 U.S. 299, 312–13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). We conclude that they are and now reverse.

■ The officers are entitled to qualified immunity with respect to Miller's § 1983 claims because the initial handcuffing and frisk of Miller was a lawful investigatory stop supported by reasonable, particularized suspicion. *See Gallegos v. City of Los Angeles,* 308 F.3d 987, 990 (9th Cir.2002). Regardless of whether, viewing the evidence in the light most favorable to Miller, the officers' subjective motivations for the *Terry* stop may have been based on improper factors, subjective intentions do not make a stop for which there is reasonable suspicion unconstitutional. *See Whren v. United States,* 517 U.S. 806, 813–14, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Although Miller's race could not by itself justify an investigatory stop, it was one relevant, permissible factor because it matched the eyewitness observations of the robber's race, and was unusual in the area where the attempted robbery occurred. *See United States v. Brignoni–Ponce,* 422 U.S. 873, 884–85, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *see also United States v. Manzo–Jurado,* 457 F.3d 928, 935–36 (9th Cir.2006); *cf. United States v. Montero–Camargo,* 208 F.3d 1122, 1132 (9th Cir.2000) (en banc). Because the totality of the circumstances established reasonable suspicion, the officers' actions were not unlawful. *See Whren,* 517 U.S. at 813–14, 116 S.Ct. 1769; *Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

The officer's suspicions were reasonable based on the recency of the attempted robbery, the proximity of the crime scene (100 yards from the motel), the officer's knowledge of the area and motel, the late hour, and such similarities as there were between Miller's appearance and the physical descriptions given by the witness and by crime bulletins about the El Torito Bandit. *See United States v. Arvizu,* 534 U.S. 266, 273–74, 122 S.Ct. 744, 151

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

L.Ed.2d 740 (2002); *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *see also Alexander v. County of Los Angeles*, 64 F.3d 1315, 1319–20 (9th Cir.1995).

Although Miller was shorter and had a different hairstyle than described by the witness, his height and weight were within the ranges the crime bulletins gave for the robber. Our dissenting colleague correctly points out discrepancies between the description the police received and Miller's appearance. But eyewitness descriptions are often imperfect, and the standard is reasonable suspicion, not probable cause.[1] *See Wardlow*, 528 U.S. at 124–25, 120 S.Ct. 673. The dissent's analogy to the *Morgan v. Woessner*, 997 F.2d 1244, 1254 (9th Cir. 1993), where the officers acted primarily on a tip that "essentially made all black men suspect," does not fit this case. Here it was as much the time, in wee hours of the morning, and location, 100 yards from the armed robbery, that made Miller suspect.

It also does not matter whether factors, standing alone, might not give rise to reasonable suspicion or might be susceptible to an innocent explanation. "Reasonable suspicion" does not demand scientific certainty. The officers' suspicions were reasonable under the "totality of the circumstances." considering all the indicia giving rise to suspicion. *See Arvizu*, 534 U.S. at 274–75, 122 S.Ct. 744. The dissent's evaluation of the factors in isolation from each other fails to account for the "totality of the circumstances," which is what matters for reasonable suspicion. *See Arvizu*, 534 U.S. at 274–75, 122 S.Ct. 744; *Sokolow*, 490 U.S. at 9–10, 109 S.Ct. 1581.

The manner of the stop—including the drawn weapons, handcuffing and frisking of Miller—was reasonable because the crime bulletin and witness provided "specific information" that the robbery suspect was armed. *Washington v. Lambert*, 98 F.3d 1181, 1192 (9th Cir.1996); *see also Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Neither the length of the investigation nor the use of handcuffs turned this lawful investigative stop into an unlawful arrest. *See United States v. Sharpe*, 470 U.S. 675, 687–88, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Gallegos*, 308 F.3d at 991–92; *United States v. Bautista*, 684 F.2d 1286, 1289–90 (9th Cir.1982); *cf. Muehler v. Mena*, 544 U.S. 93, 99–100, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); *United States v. Montoya de Hernandez*, 473 U.S. 531, 544, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). It was reasonable for the officers to continue the detention while investigating incriminating evidence found during the course of the stop, such as the loaded handgun that looked like the suspect's weapon.

The district court's order is **RE-VERSED**. On **REMAND**, judgment should be entered for the defendants on Miller's § 1983 claims.

IKUTA, Circuit Judge, dissenting:

Because this case comes to us as an appeal from a denial of summary judgment based on qualified immunity, we must take all evidence in the light most favorable to Miller. Applying this standard, Simi Valley police received a report that a black

---

1. The dissent's reliance on *United States v. Montero–Camargo* is misplaced. In that case, the majority of the people passing through the Border Patrol checkpoint were Hispanic. Here, the majority of residents were a different race from the suspect. If eyewitnesses in a black neighborhood described a robber as a "white guy," whiteness could be among the grounds for reasonable suspicion of the only white male spotted in the area. Here there was that and more.

male in his late 20s, described by an eye-witness as 6′2″ tall, 175 pounds, unkempt, and with hair styled in a "medium length loose afro," had attempted to rob an El Torito restaurant. Three hours after the incident, Officer Hahesy was informed by an employee at a nearby Motel 6 "that two male blacks and a white female had checked into the motel." The party had registered under the name Bernard Miller. Miller's driver's license and license plate records came up clean, but Hahesy decided the situation warranted further investigation. Officer Hahesy slowly drove his patrol car past Miller's room, where the door was wide open and he could see Miller and his friends seated on beds, listening to music on a laptop, and conversing. Miller saw Hahesy drive by and continued about his business.

Miller is a black male in his late 20s. He is 5′11″ tall (three inches shorter than the suspect) and 155 pounds (20 pounds lighter than the suspect). He had close-shaven hair rather than a medium-length loose afro. According to the police photographs he was well-groomed in appearance, not unkempt. Miller also had a mustache, a trait not shared by the suspect.

Nevertheless, after observing the three individuals relaxing in the open motel room, Hahesy called for backup. Shortly thereafter, four police officers approached the open door, two with guns drawn. An officer knocked on the door, stuck his head inside, and asked to speak with Miller. Miller said "sure," turned off the music, and walked towards the door. As Miller crossed the threshold of the room, the officer and two others seized Miller and forcibly pulled him outside. They pushed his face against the outside wall and handcuffed him. They informed Miller that they were searching for a black suspect, and Miller said: "I'm an off-duty correction officer. I do have an off-duty weapon on me on my right-hand side. Inside the motel room is my jacket with my I.D. and my badge." The officers detained Miller for 45 minutes in handcuffs while they searched his motel room and car.

At the time Miller was seized and hand-cuffed, the officers had no reasonable basis for suspecting that Miller had attempted to rob the El Torito. Other than age, race, and gender, Miller shared no other traits with the suspect, and, given the circumstances, these traits are not sufficient to establish reasonable suspicion. Officers are not permitted to "rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." *United States v. Manzo-Jurado,* 457 F.3d 928, 935 (9th Cir.2006); *see also Choi v. Gaston,* 220 F.3d 1010, 1012 (9th Cir.2000) (per curiam). Even where a suspect has been identified by race, it was clearly established at the time of the incident that "persons of a particular racial or ethnic group may not be stopped and questioned because of such appearance, unless there are other individualized or particularized factors which, together with the racial or ethnic appearance identified, rise to the level of reasonable suspicion or probable cause." *United States v. Montero-Camargo,* 208 F.3d 1122, 1134 n. 22 (9th Cir.2000) (en banc); *see also Morgan v. Woessner,* 997 F.2d 1244, 1254 (9th Cir.1993) (holding that an informant's tip "which essentially made all black men suspect, and the supposed fact that Morgan looked at them, turned and walked away" were insufficient to establish reasonable suspicion). Here, Miller shared no individualized or particularized factors with the suspect. To the contrary, Miller's moustache and hairstyle, readily apparent traits not shared by the suspect, undercut any reasonable basis for suspicion. *See Choi,* 220 F.3d at 1012.

Nor did the circumstances in which the officers spotted Miller give rise to a reasonable suspicion that would have permitted them to detain Miller on first contact. Three hours had elapsed since the attempted robbery, and the police had no reason to believe the suspect was still in the area. Miller had not tried to conceal his identity, but rather had booked the room with his own credit card and identification, and had provided his license plate number to the motel. Officer Hahesy's review of Miller's license and registration records raised no suspicions. While the Motel 6 was known as a locale where illegal drug activities took place, it was not known as a refuge for fleeing robbers. Moreover, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Further, the Motel 6 was a legitimate motel business. Where a location is used for both legal and illegal purposes, the presence of a person at that location "is not significantly probative to an assessment of reasonable suspicion." *Manzo–Jurado,* 457 F.3d at 936.

Finally, Miller's actions leading up to the detention did not give rise to an objectively reasonable suspicion that he had committed a crime. When an individual's actions could have either innocent or unlawful explanations, a police officer may detain the individual in order "to resolve the ambiguity." *Wardlow,* 528 U.S. at 125, 120 S.Ct. 673. This doctrine is inapplicable here, because none of Miller's actions was suspicious. After Officer Hahesy drove by the room, Miller left the door open and remained seated on the bed in plain view, listening to music on his laptop and conversing with the room's co-occupants. He did not get up, turn off the lights, or even shut the motel room door.

Miller readily approached the officers upon request, at which point they allegedly seized and handcuffed him. Nothing in Miller's innocuous actions, either singularly or taken together, would "justify the suspicion that criminal activity was afoot." *United States v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks omitted); *see also Manzo–Jurado,* 457 F.3d at 939.

As the majority correctly states, reasonable suspicion is evaluated in light of the "totality of the circumstances." Taking into account the totality of the circumstances, and resolving all facts and inferences in favor of Miller, we must acknowledge that Miller did not share a single characteristic with the suspect other than his age, ethnicity, and gender, and that Miller's background, criminal record, surroundings, and actions were not suspicious or indicative of criminal activity. Under the totality of these circumstances, the police lacked a reasonable suspicion to handcuff and detain Miller immediately as he crossed the threshold of the room. Because Miller has created a jury question regarding whether he was detained without reasonable suspicion, the district court did not err in denying summary judgment at this stage of the proceedings. I respectfully dissent.