MEMORANDUM *
Simi Valley police officers Dan Swanson, Christopher Hahesy, Francis Panza, Matt Buchannan and William Lappin (collectively, officers) appeal the district court’s order denying their summary judgment motion based on qualified immunity. We have jurisdiction to decide whether the officers are entitled to qualified immunity as a matter of law, viewing the facts in the light most favorable to Miller. See Kennedy v. City of Ridgefield, 439 F.3d 1055, 1059-60 (9th Cir.2006); see also Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). We conclude that they are and now reverse.
The officers are entitled to qualified immunity with respect to Miller’s § 1983 claims because the initial handcuffing and frisk of Miller was a lawful investigatory stop supported by reasonable, particularized suspicion. See Gallegos v. City of Los Angeles, 308 F.3d 987, 990 (9th Cir.2002). Regardless of whether, viewing the evidence in the light most favorable to Miller, the officers’ subjective motivations for the Terry stop may have been based on improper factors, subjective intentions do not make a stop for which there is reasonable suspicion unconstitutional. See Whren v. United States, 517 U.S. 806, 813-14, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Although Miller’s race could not by itself justify an investigatory stop, it was one relevant, permissible factor because it matched the eyewitness observations of the robber’s race, and was unusual in the area where the attempted robbery occurred. See United States v. Brignoni-Ponce, 422 U.S. 873, 884-85, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); see also United States v. Manzo-Jurado, 457 F.3d 928, 935-36 (9th Cir.2006); cf. United States v. Montero-Camargo, 208 F.3d 1122, 1132 (9th Cir.2000) (en banc). Because the totality of the circumstances established reasonable suspicion, the officers’ actions were not unlawful. See Whren, 517 U.S. at 813-14, 116 S.Ct. 1769; Scott v. United States, 436 U.S. 128, 136, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).
The officer’s suspicions were reasonable based on the recency of the attempted robbery, the proximity of the crime scene (100 yards from the motel), the officer’s knowledge of the area and motel, the late hour, and such similarities as there were between Miller’s appearance and the physical descriptions given by the witness and by crime bulletins about the El Torito Bandit. See United States v. Arvizu, 534 U.S. 266, 273-74, 122 S.Ct. 744, 151 *683 L.Ed.2d 740 (2002); Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); see also Alexander v. County of Los Angeles, 64 F.3d 1315, 1319-20 (9th Cir.1995).
Although Miller was shorter and had a different hairstyle than described by the witness, his height and weight were within the ranges the crime bulletins gave for the robber. Our dissenting colleague correctly points out discrepancies between the description the police received and Miller’s appearance. But eyewitness descriptions are often imperfect, and the standard is reasonable suspicion, not probable cause.[1] See Wardlow, 528 U.S. at 124-25, 120 S.Ct. 673. The dissent’s analogy to the Morgan v. Woessner, 997 F.2d 1244, 1254 (9th Cir. 1993), where the officers acted primarily on a tip that “essentially made all black men suspect,” does not fit this case. Here it was as much the time, in wee hours of the morning, and location, 100 yards from the armed robbery, that made Miller suspect.
It also does not matter whether factors, standing alone, might not give rise to reasonable suspicion or might be susceptible to an innocent explanation. “Reasonable suspicion” does not demand scientific certainty. The officers’ suspicions were reasonable under the “totality of the circumstances.” considering all the indicia giving rise to suspicion. See Arvizu, 534 U.S. at 274-75, 122 S.Ct. 744. The dissent’s evaluation of the factors in isolation from each other fails to account for the “totality of the circumstances,” which is what matters for reasonable suspicion. See Arvizu, 534 U.S. at 274-75, 122 S.Ct. 744; Sokolow, 490 U.S. at 9-10, 109 S.Ct. 1581.
The manner of the stop — including the drawn weapons, handcuffing and frisking of Miller — was reasonable because the crime bulletin and witness provided “specific information” that the robbery suspect was armed. Washington v. Lambert, 98 F.3d 1181, 1192 (9th Cir.1996); see also Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Neither the length of the investigation nor the use of handcuffs turned this lawful investigative stop into an unlawful arrest. See United States v. Sharpe, 470 U.S. 675, 687-88, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); Gallegos, 308 F.3d at 991-92; United States v. Bautista, 684 F.2d 1286, 1289-90 (9th Cir.1982); cf. Muehler v. Mena, 544 U.S. 93, 99-100, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); United States v. Montoya de Hernandez, 473 U.S. 531, 544, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). It was reasonable for the officers to continue the detention while investigating incriminating evidence found during the course of the stop, such as the loaded handgun that looked like the suspect’s weapon.
The district court’s order is REVERSED. On REMAND, judgment should be entered for the defendants on Miller’s § 1983 claims.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. The dissent's reliance on United States v. Montero-Camargo is misplaced. In that case, the majority of the people passing through the Border Patrol checkpoint were Hispanic. Here, the majority of residents were a different race from the suspect. If eyewitnesses in a black neighborhood described a robber as a "white guy,” whiteness could be among the grounds for reasonable suspicion of the only white male spotted in the area. Here there was that and more.