**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Donnie Lee JONES, Defendant–
Appellant.**

No. 99–50139.

D.C. No. CR 97–0093–AHS.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 4, 2000.[1]

Decided Feb. 15, 2001.

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before JAMES R. BROWNING, PREGERSON, and BEEZER, Circuit Judges.

## MEMORANDUM [2]

Appellant Donnie Lee Jones ("Jones") appeals his conviction, following a jury trial, of two counts of bank robbery in violation of 18 U.S.C. § 2113(a) (West 2000). Jones claims that the district court erred in denying his motions to: (1) suppress the evidence obtained pursuant to an investigatory stop by the police; and (2) substitute counsel. We affirm.

 Jones contends that his seizure by police officers at the Chase Suites Hotel ("the hotel") was not an investigatory stop, but rather a full-blown arrest unsupported by probable cause.[3] There is no bright-line rule that distinguishes a "Terry stop" from a de facto arrest. *Washington v. Lambert,* 98 F.3d 1181, 1185 (9th Cir.1996). Instead the court must consider the "totality of the circumstances," by weighing the level of intrusiveness of the stop and the degree to which it restricted the defendant's liberty against "the inherent danger of the situation"; i.e., whether the police officers had reason to fear for their safety. *Id.* at 1185–87; *United States v. Alvarez,* 899 F.2d 833, 838 (9th Cir.1990) (noting that "a police officer may take reasonable measures to neutralize the risk of physical harm and to determine whether the sus-

---

**2.** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

**3.** An investigatory stop, also known as a *Terry* stop, need only be supported by reasonable suspicion, which is defined as the observation by a police officer of "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be

afoot and that the persons with whom he is dealing may be armed and presently dangerous." *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Jones does not dispute that the police officers had the requisite reasonable suspicion to justify a *Terry* stop. Thus, the only claim before this court is whether the *Terry* stop escalated into a de facto arrest requiring probable cause.

pect in question is armed") (internal citations omitted).

Jones claims that because the police officers drew their guns and forced him to lie on the floor of the hotel lobby while they searched his body for weapons, the stop was sufficiently intrusive to constitute an arrest without probable cause in violation of the Fourth Amendment. While it is true that an investigatory stop becomes increasingly intrusive when police point their guns at a suspect and physically restrict his liberty, these actions may be justified when police have specific information indicating that the suspect has recently committed a crime, is carrying a firearm or is acting in a combative or noncooperative manner. *Lambert*, 98 F.3d at 1189; *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056–57 (9th Cir.1995). In every situation, the touchstone of the inquiry is "one of reasonableness under the circumstances." *Id.*, 66 F.3d at 1057 (internal citations omitted).

 The district court correctly concluded that the police officers' use of force in detaining Jones at the hotel was reasonable under the circumstances and did not constitute a de facto arrest. Officer Cox, one of the police officers who seized Jones at the hotel, had seen Jones on the street fifteen minutes earlier. When he saw Jones on the street, Officer Cox was searching for a man who had reportedly just robbed a nearby bank. Officer Cox observed that Jones matched the description of the bank robbery suspect and attempted to approach Jones in his patrol car. When Jones saw Officer Cox turn the patrol car in his direction, he fled. A chase ensued, during which local businesses, including the hotel, were notified that an armed bank robbery suspect was at large in the vicinity.

The hotel informed the police department that a man matching the bank rob-

bery suspect's description was in the hotel lobby. When Officer Cox arrived with another officer, he recognized Jones, who was sitting in the hotel lobby with his hands clenched. Officer Cox noticed that Jones appeared nervous and was sweating profusely, as if he had been running. Cox ordered Jones to lie down on the ground and unclench his hands, which Jones refused to do. Cox and the other officers then forced Jones to lie on the ground. The officers then pried open Jones's hands, which contained several $100 and $50 dollar bills, the same denominations the bank had reported stolen.

The officers' actions were reasonable in light of the specific information in their possession: Jones matched the description of the bank robbery suspect and had behaved suspiciously on the street. Moreover, the officers had reason to fear for their safety because they had been warned that the bank robber was armed. Jones refused to unclench his hands, which might have concealed weapons, and he was generally uncooperative. For these reasons, the investigatory stop did not escalate into a full-blown arrest, and the thorough search of his body for weapons was reasonable under the circumstances.

 Jones also claims that the district court's refusal to grant his motion to substitute counsel violated his Sixth Amendment right to counsel. A district court's denial of a motion for substitution of counsel is reviewed for abuse of discretion. *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir.2000). In reviewing whether the district court abused its discretion, this court evaluates: (1) the timeliness of the motion to substitute counsel; (2) the adequacy of the court's inquiry into the problems concerning present counsel; and (3) whether the conflict between the defendant and his counsel was so great that it resulted in a total breakdown in communication preclud-

ing adequate representation. *United States v. Corona–Garcia*, 210 F.3d 973, 976 (9th Cir.2000).

 A district court has "broad discretion" to deny a motion for substitution of counsel that is "made on the eve of trial if the substitution would require a continuance." *United States v. Schaff*, 948 F.2d 501, 504 (9th Cir.1991) (citing *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir.1986)). In this case, the district court acted well within its discretion. The defendant made his motion for substitution of counsel on the first day of trial, which probably would have required a continuance, because Jones had not identified a replacement counsel. Moreover, this was Jones's second motion for substitution of counsel.[4] The district court had granted Jones's earlier motion, which required granting a continuance in order to replace one appointed counsel with another appointed counsel. Furthermore, Jones could articulate no specific reasons for his dissatisfaction with his replacement counsel. Given the untimeliness of Jones's motion for substitution and the context in which it was made, the district court acted within its discretion in concluding that the motion was an untimely and strategic attempt to delay the trial. *Corona–Garcia*, 210 F.3d at 977 (denying motion for substitution of counsel where "late notice and motion are combined ... with weak, chimerical arguments"); *United States v. George*, 85 F.3d 1433, 1439 (9th Cir.1996) (upholding district court's denial of defendant's second motion for substitution of counsel after concluding that it was part of

defendant's "frivolous and strategic attempts to delay his trial").

AFFIRMED.

---

4. There is some dispute regarding the precise date at which the substitution of counsel issue first arose. Jones sent a letter dated August 19, 1998, which conveyed the substance of the substitution of counsel claim, and a notation by the court clerk indicates that the letter was received that same day. Trial began several weeks later, on September 1, 1998. The transcript of the court proceedings indicates that the court had not received the letter at the time. The docket shows that the letter was filed three days later, on September 4. More is not apparent from the record.