*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 5, 2024

Plaintiff-Appellee,

v

No. 367209
Kent Circuit Court
LC No. 23-002112-FH

FREDDIE WILKINS III,

Defendant-Appellant.

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM

This interlocutory appeal has been remanded by our Supreme Court for consideration as on leave granted.[1] Freddie Wilkins III appeals the trial court's denial of his motion to suppress evidence discovered after a traffic stop of himself and another individual, when both were under the age of 21, during which the investigating officer smelled marijuana and the passenger later admitted that there was a small amount of marijuana in the vehicle. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The record here consists primarily of a preliminary examination transcript featuring testimony from one witness, Michigan State Police Trooper James Tompkins. Trooper Tompkins testified that on January 16, 2023, he observed a speeding vehicle and effectuated a traffic stop. The driver was defendant-appellant Freddie Wilkins III. Wilkins was driving with a passenger. Trooper Tompkins approached the passenger side of the vehicle and detected the odor of marijuana through the rolled-down window; based on the driver's licenses belonging to Wilkins and the passenger, neither was old enough to legally possess marijuana.[2] Neither Wilkins nor the

---

[1] *People v Wilkins III*, 4 NW3d 343 (Mich, 2024).

[2] The Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq.*, which was approved by voters in 2018, generally decriminalized the use and possession of marijuana by adults aged 21 years or older. See MCL 333.27952. Under the MRTMA, adults at

passenger exhibited any signs of intoxication. Wilkins and the passenger both denied possessing any marijuana. At some point Trooper Tompkins returned to his cruiser to request a backup unit.

After requesting a second unit, Trooper Tompkins ordered Wilkins to exit the vehicle, and Wilkins denied having any firearms on his person.[3] Trooper Tompkins brought Wilkins back to his police cruiser, informed him that he was subject to a search, and performed a search of Wilkins' person and found nothing. Wilkins was not handcuffed at the time and was standing in front of Trooper Tompkins's police cruiser.

A second police unit arrived about 5 to 10 minutes after Trooper Tompkins requested assistance. Trooper Tompkins then asked the passenger to step out of the vehicle, and the passenger admitted that there was a small amount of marijuana in the vehicle.

Trooper Tomkins testified that he conducted a search of the vehicle based on the passenger's admission. He stated that he began his search based on the seeming civil infraction— a minor being in possession of marijuana—but thought that the search could reveal evidence of something more than a civil infraction. Trooper Tomkins did not seek consent to search. He searched the entire vehicle, including going through a backpack on the floorboard in front of the passenger's seat. In the backpack, Trooper Tomkins found plastic baggies consistent with those obtained from marijuana dispensaries and a Glock semiautomatic handgun with a 33-round magazine in it. Wilkins was then placed under arrest, handcuffed, and advised of his *Miranda*[4] rights. Wilkins admitted that he did not possess a concealed pistol license, the handgun belonged to him, and he knew the handgun was in the backpack.

Wilkins was charged with carrying a concealed weapon (CCW) in a vehicle, MCL 750.227. At the preliminary examination, defense counsel stated that the search was unconstitutional and Wilkins should not be bound over. When Wilkins was bound over to circuit

---

least 21 years old may possess up to 2.5 ounces of marijuana. See MCL 333.27955(1)(a). But the MRTMA does not allow the use of marijuana in a public area, MCL 333.27954(1)(e); "smoking marihuana within the passenger area of a vehicle upon a public way," MCL 333.27954(1)(g); or operating a vehicle while under the influence of marijuana, MCL 333.27954(1)(a). Under MCL 333.27965(3), persons under 21 possessing 2.5 ounces or less of marijuana are guilty of a civil infraction. Anyone possessing between 2.5 to 5 ounces is also guilty of a civil infraction (or a misdemeanor for a third offense), MCL 333.27965(2), and possession of more than 5 ounces is always a misdemeanor, MCL 333.27965(4). As this Court observed in *People v Armstrong*, 344 Mich App 286, 297-298; 1 NW 3d 299 (2022), "analysis of search-and-seizure law is now much more complicated and nuanced than it was when marijuana was unlawful in all circumstances in Michigan."

[3] It is somewhat unclear from the record whether this occurred before or after backup arrived. At one point, Trooper Tompkins testified that "[o]nce [backup] arrived, I recontacted [Wilkins] and asked him out of the car." But Trooper Tompkins later seemed to confirm that he asked Wilkins out of the vehicle after requesting backup.

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

court, he again raised the issue of the constitutionality of the search in a motion to suppress. Wilkins argued that the trooper's search of his person exceeded the permissible scope and duration of *Terry*,[5] the search of the vehicle was not justified by the automobile exception to the warrant requirement, and the automobile exception should not extend to suspected civil infractions.

The circuit court denied Wilkins' motion, finding that Trooper Tompkins's actions "were based on specific, reasonable inferences drawn from the initial smell of marijuana and the age of the vehicle's occupants." According to the circuit court, "Trooper Tompkins had no way of knowing what amount of marijuana was in the vehicle, if any. He therefore was entitled to extend the scope of and duration of the stop to determine what amount of marijuana, if any, was present." Therefore, the scope and duration of the *Terry* stop were not exceeded.[6]

Wilkins now appeals.

## II. STANDARD OF REVIEW

"We review de novo questions of constitutional law and a trial court's decision on a motion to suppress evidence. When the issue is preserved, a trial court's factual findings made when ruling on a motion to suppress are reviewed for clear error." *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 5 (cleaned up). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Swirles*, 218 Mich App 133, 136; 553 NW2d 357 (1996). "It is the prosecutor's burden to show that a search and seizure challenged by a defendant were justified by a recognized exception to the warrant requirement." *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003).

## III. ANALYSIS

Both the United States and Michigan Constitutions guarantee protection against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Steele*, 292 Mich App 308, 314; 806 NW2d 753 (2011). "Fourth Amendment search and seizure protections also apply to brief investigative detentions." *Steele*, 292 Mich App at 314. "Searches and seizures, according to the United States Constitution and the Michigan Constitution, must be conducted reasonably, and in most cases that requires issuance of a warrant supported by probable cause, in order for the results to be admissible." *People v Armstrong*, 344 Mich App 286, 295; 1 NW 3d 299 (2022) (quotation marks and citation omitted).

This case involves two distinct but related exceptions to the warrant requirement, which we address in turn. Also relevant here, the judicially created exclusionary rule encompasses both the evidence obtained as a direct result of an illegal search and seizure, as well as any "evidence later discovered and found to be derivative of an illegality," also known colloquially as "fruit of

---

[5] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[6] The circuit court neglected to evaluate the scope of *Terry* as it applies to Trooper Tompkins's pat-down of Wilkins.

the poisonous tree," subject to the attenuation-doctrine analysis. *Utah v Strieff*, 579 US 232, 237-238; 136 S Ct 2056; 195 L Ed 2d 400 (2016) (quotation marks and citation omitted).

## A. THE AUTOMOBILE EXCEPTION

Given binding authority from this Court concerning the automobile exception under similar circumstances after passage of the Michigan Medical Marihuana Act (the MMMA), MCL 333.26421 *et seq*., and the MRTMA, we address this issue first. "[U]nder the automobile exception, the police may search a motor vehicle without the necessity of first obtaining a warrant if probable cause to support the search exists." *People v Kazmierczak*, 461 Mich 411, 418-419; 605 NW2d 667 (2000), overruled in part on other grounds by *Armstrong*, 344 Mich App 286. Probable cause to issue a search warrant exists when "there is a 'substantial basis' for inferring a 'fair probability' that contraband *or* evidence of a crime will be found in a particular place." *Id*. at 417-418 (emphasis added). That same probable-cause analysis applies to warrantless searches. *People v Levine*, 461 Mich 172, 182; 600 NW2d 622 (1999).

As particularly relevant here, this Court held as follows in the wake of Michigan legalizing recreational marijuana for those 21 years old and older:

> [T]he odor of marijuana is relevant to the totality of the circumstances test and can contribute to a probable cause determination, but the smell of marijuana, by itself, does not give rise to probable cause unless it is combined with other factors that bolster the concern about illegal activity that may flow from the smell of marijuana. [*Armstrong*, 344 Mich App at 300 (quotation marks and citation omitted).[7]]

The Court based its decision in large part on passage of the MRTMA and the associated change in law concerning possession and use of marijuana. *Id*. at 299. However, probable cause to effectuate

---

[7] *Armstrong* overruled the pre-MRTMA case *People v Kazmierczak*, 461 Mich 411; 605 NW2d 667 (2000), to the extent *Kazmierczak* held that the smell of marijuana alone coming from a vehicle established probable cause for a search. *Armstrong*, 344 Mich App at 297, 299. *Armstrong* is currently pending before our Supreme Court. In November 2023, the Court scheduled oral arguments on the application for leave to appeal, instructing the parties to address

> (1) whether [the MRTMA] supersedes the rule that "the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle, pursuant to the motor vehicle exception to the warrant requirement," [*Kazmierczak*, 461 Mich at 426] (footnote omitted); (2) if so, whether the exclusionary rule applies to searches conducted in good-faith reliance upon *Kazmierczak* . . . (3) alternatively, if the holding of *Kazmierczak* has been superseded by the MRTMA, whether the smell of marijuana alone may establish reasonable suspicion to perform an investigatory stop pursuant to *Terry*[]; and (4) if so, whether the trial court clearly erred in concluding that the firearm recovered in this case was not in plain view during an otherwise constitutional *Terry* stop. [*People v Armstrong*, 513 Mich 892 (2023).]

a search under the automobile exception may still exist when the smell of marijuana is combined with other suspicious facts, like a suspect "lying about his legal possession." *Id*. at 298, distinguishing *People v Moorman*, 331 Mich App 481, 487-488; 952 NW2d 597 (2020).

In *Moorman*, the suspect, having been stopped for speeding, denied that marijuana was present in his vehicle despite the police officer's detection of the odor of marijuana. *Moorman*, 331 Mich App at 483. The Court noted that the defendant could legally possess up to 2.5 ounces of marijuana under the MMMA, but it sought to answer whether "the trooper h[ad] probable cause to believe the possession was unlawful because of the quantity involved[.]" *Id*. at 487. The Court then determined that the defendant's "deception about the presence of marijuana in the vehicle would give rise to probable cause to believe that the amount possessed was greater than that permitted under the MMMA." *Id*. at 488.

> [W]e conclude that [the] defendant's behavior (denying the presence of marijuana) was inconsistent with being in lawful possession of marijuana under the MMMA. This behavior, in conjunction with the odor of marijuana, gave rise to probable cause to believe that [the] defendant was in possession of marijuana in a manner not consistent with the protections of the MMMA. Accordingly, the search of the vehicle was lawful. [*Id*. at 499 (footnote omitted).]

Notably, in both *Armstrong* and *Moorman*, it was unclear what—if any—amount of marijuana was discovered in the respective searches, but each defendant—like Wilkins here—was charged with CCW after unregistered weapons were discovered in their vehicles. See *Armstrong*, 344 Mich App at 290-294; *Moorman*, 331 Mich App at 482-484. Relatedly, neither case mentions the penalties of the MRTMA or the MMMA, nor makes any reference to or distinction between civil and criminal infractions under these acts.[8]

Nevertheless, on appeal, Wilkins argues that the vehicle search was not justified under the automobile exception because the facts did not give rise to probable cause that the vehicle contained a *criminal* amount of marijuana over 2.5 ounces, as opposed to a lesser amount punishable as a civil infraction.

As an initial matter, we acknowledge the distinction between civil and criminal infractions under the MRTMA and the related argument that facts must indicate some noncivil violation to support a likelihood of discovering contraband or evidence of a crime under the automobile exception (or relatedly to support reasonable suspicion of criminal activity under *Terry*). Indeed, at least one lower federal court[9] has made this precise distinction, albeit with respect only to *Terry* and reasonable suspicion of criminal activity. See *United States v Pavao*, ___ F Supp ___, ___ (D

---

[8] As related to the next issue, both cases also lack any discussion of *Terry* or related cases.

[9] Decisions of lower federal courts are nonbinding on this Court but may be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

RI, 2023) (Docket No. 1:22-CR-00034-MSM-PAS), slip op at 1-3[10] (holding that the traffic stop at issue could be prolonged "only by a reasonable suspicion that there was additional marijuana in the car which exceeded the 1 oz. demarcation between a civil and criminal violation."). Michigan law also generally distinguishes crimes from civil infractions. See MCL 750.5 (" 'Crime' means an act or omission forbidden by law *which is not designed as a civil infraction . . . .*") (emphasis added). But we reject such a distinction as it applies to the MRTMA in Michigan, at least concerning the automobile exception.[11]

Again, neither *Armstrong* nor *Moorman* mentions the penalties of the MRTMA or the MMMA, nor makes any reference to or distinction between civil and criminal infractions under these acts. And neither defendant in those cases was charged with any marijuana-related offense, and this Court did not indicate what, if any, amount of marijuana was discovered in the respective searches. In our view, these omissions support that any distinction between civil and criminal penalties under the MRTMA is irrelevant, and we conclude that probable cause exists to support a warrantless vehicle search *so long as* facts adequately support that the suspected activity is generally unlawful.

Indeed, *Armstrong* only mentions "*illegal activity* that may flow from the smell of marijuana." *Armstrong*, 344 Mich App at 300 (emphasis added). *Moorman* similarly contemplated whether "possession was [generally] *unlawful* [for the over-21 defendant] because of the quantity involved[.]" *Moorman*, 331 Mich App at 487 (emphasis added). See also *id*. at 488 (characterizing unlawful possession as "greater than that permitted under the MMMA"); *id*. at 499 (The defendant's conduct was "inconsistent with being in lawful possession of marijuana under the MMMA. This behavior, in conjunction with the odor of marijuana, gave rise to probable cause to believe that [the] defendant was in possession of marijuana in a manner not consistent with the protections of the MMMA.)

Further, even though Michigan law clearly distinguishes crimes from civil infractions, MCL 750.5, the automobile exception applies to evidence of a crime *or* contraband, *Kazmierczak*, 461 Mich at 417-418. Notwithstanding the civil penalties applicable to Wilkins here for possessing a small amount of marijuana, we conclude that because it was generally illegal for him to possess any amount of marijuana, even such a small amount constituted contraband subject to search. See

---

[10] Because no official reported decision is currently available for this case, we cite the page numbers from the slip opinion in this case on Westlaw. See 2023 WL 3934555.

[11] We acknowledge that this distinction is arguably also applicable to whether there is reasonable suspicion of criminal activity under *Terry*. But Wilkins' argument on appeal only distinguishes between civil and criminal penalties with respect to the automobile exception. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted). We therefore decline to rule on this issue in the present case.

*American Eagle Fireworks v Lansing*, unpublished[12] per curiam opinion of the Court of Appeals, issued June 18, 1999 (Docket No. 206713), p 2 ("Contraband per se refers to items of which the mere possession is contrary to public policy. . . . The fireworks in the instant case were not legally possessed . . . . Because the fireworks in this matter were contraband per se, their seizure and immediate forfeiture was authorized by MCL 780.652[.]").

Indeed, had the Legislature intended for the MRTMA to exclude from contraband lesser amounts of marijuana subject only to civil fines, it could have explicitly said so in the act. Contra *United States v Maffei*, 417 F Supp 3d 1212, 1224-1228 (ND Cal, 2019) (the smell of marijuana alone did not establish probable cause of criminal activity or the existence of contraband after California's decriminalization for possessing less than 28.5 grams of marijuana in part because the relevant statute "provide[d] that '[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are *not contraband* nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, *search*, or arrest.' ") (Emphasis added in original).

Applying the foregoing to the instant facts, we conclude that probable cause existed to support that Wilkins illegally possessed marijuana contrary to the protections of the MRTMA. In addition to the smell of marijuana, Trooper Tomkins became aware at the outset of the traffic stop that both Wilkins and the passenger were under 21. Wilkins and the passenger first denied the existence of any marijuana. But the passenger critically admitted that there was marijuana in the vehicle once she exited the car. Taken together, these facts supported that there a was a fair probability (and more like a guarantee given the admission from the passenger) that contraband would be recovered from the vehicle, therefore justifying the search under the automobile exception.[13]

## B. *TERRY* STOP

We now turn to Wilkins' argument that the stop here was impermissible under *Terry* in scope and duration. He specifically argues that Trooper Tompkins' pat-down was improper and tainted any evidence later discovered.

In *Terry v Ohio*, 392 US 1, 21, 30-31; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the United States Supreme Court held that the Fourth Amendment permits a police officer to make a brief investigative stop (a "*Terry* stop") and detain a person if the officer has a reasonable, articulable suspicion that criminal activity is afoot. "The police may . . . make a *Terry* stop and briefly detain a person who is in a motor vehicle if the officer has a reasonable, articulable suspicion that the person is engaged in criminal activity." *Steele*, 292 Mich App at 314. Further, "[a]s a general

---

[12] "While [unpublished] opinions are not binding precedent . . . , [this Court] may consider them as instructive or persuasive." *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011).

[13] Given the passenger's admission, we need not decide today whether, because those under 21 cannot lawfully possess any amount of marijuana, there is probable cause to justify a search in cases involving such persons based on the smell of marijuana alone. This is a question for another day.

matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996).

A *Terry* stop is a "brief, on-the-scene detention of an individual [that] is not a violation of the Fourth Amendment as long as the officer can articulate a reasonable suspicion for the detention." *People v Pagano*, 507 Mich 26, 32; 967 NW2d 590 (2021) (quotation marks and citation omitted). "A seizure for a traffic violation justifies a police investigation of that violation. A relatively brief encounter, a routine traffic stop is more analogous to a so-called '*Terry* stop' than to a formal arrest." *Rodriguez v United States*, 575 US 348, 354; 135 S Ct 1609; 191 L Ed 2d 492 (2015) (quotation marks and citation omitted, alterations incorporated). "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures," and the same is true of passengers. *Maryland v Wilson*, 519 US 408, 412-415; 117 S Ct 882; 137 L Ed 2d 41 (1997) (quotation marks and citation omitted).

Further, "[a]n officer who makes a valid investigatory stop may perform a limited patdown search for weapons if the officer has reasonable suspicion that the individual stopped for questioning is armed and thus poses a danger to the officer." *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Adams v Williams*, 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972). The scope of a pat-down search must be limited and "reasonably designed to discover guns, knives, clubs, or other hidden instruments that could be issued to assault an officer." *Champion*, 452 Mich at 99. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 US at 27. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Minnesota v Dickerson*, 508 US 366, 373; 113 S Ct 2130; 124 L Ed 2d 334 (1993).

The duration of a *Terry* stop may last only so long as necessary to address the reasons that justified the stop and unrelated inquiries that "do not measurably extend the duration of the stop." *Rodriguez*, 575 US at 355 (quotation marks and citation omitted). However, if the traffic stop reveals a new set of circumstances that lead to a "reasonably articulable suspicion that criminal activity [is] afoot," then continued detention of the suspect does not run afoul of the Fourth Amendment, subject to an analysis of the totality of the facts and circumstances. *People v Kavanaugh*, 320 Mich App 293, 301; 907 NW2d 845 (2017). "[W]hen a traffic stop reveals a new set of circumstances, an officer is justified in extending the detention long enough to resolve the suspicion raised." *Williams*, 472 Mich at 315.

Because Wilkins was speeding, Trooper Tompkins was justified in initiating the initial traffic stop and investigating this violation. Further, because Trooper Tompkins lawfully stopped Wilkins for a traffic violation, he did not violate the Fourth Amendment by ordering Wilkins and the passenger to step outside the vehicle. See *Wilson*, 519 US at 412-415. To the extent the stop was extended as Trooper Tompkins awaited backup, we similarly deem this warranted by officer safety and proper. Permissible tasks within the scope of a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and

inspecting the automobile's registration and proof of insurance," as well as "certain negligibly burdensome precautions" related to officer safety. *Rodriguez*, 575 US at 355-56.

The United States Supreme Court has recognized "that traffic stops are especially fraught with danger to police officers." *Arizona v Johnson*, 555 US 323, 330, 129 S Ct 781, 172 L Ed 2d 694 (2009) (quotation marks and citation omitted); see also *Pennsylvania v Mimms*, 434 US 106, 110, 98 S Ct 330, 54 L Ed 2d 331 (1977) (recognizing "the inordinate risk confronting an officer" in a traffic stop). Because it is "unreasonable to require that police officers take unnecessary risks in the performance of their duties," *Terry*, 392 U.S. at 23, "officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations," *Allen v City of Los Angeles*, 66 F3d 1052, 1056 (CA 9, 1995). Because Trooper Tompkins was outnumbered here by Wilkins and the passenger, particularly given that the initially straightforward traffic stop was complicated once Trooper Tomkins suspected the prohibited possession of marijuana by persons under 21, we conclude that it was reasonable and proper for him to delay the stop for the 5 to 10 minutes it took for backup to arrive.

However, the record is lacking any support that Wilkins was armed and posed any danger to Trooper Tompkins, or that the pat-down was reasonably intended to discover hidden weapons. See *Champion*, 452 Mich at 99. Rather, Trooper Tompkins stated that Wilkins denied having any weapons, and Trooper Tompkins unequivocally testified that the pat-down was to search for marijuana, not weapons. Nothing in the record provides any basis to support that Wilkins was armed or dangerous in any way before the pat-down occurred. Accordingly, regardless of whether the pat-down occurred before or after backup arrived and added any time to the stop, it was an improper evidentiary pat-down unjustified by officer safety.

Nevertheless, the pat-down did not reveal any evidence, nor did it affect or otherwise lead to the vehicle search principally at issue here. As discussed, Trooper Tomkins had probable cause once smelling marijuana and discovering Wilkins' and the passenger's ages—particularly given the initial deception and the passenger's later admission[14]—to search Wilkins' vehicle for suspected contraband. And as explained below, the vehicle search was sufficiently distinct and severable from the improper pat-down. Under these circumstances, the gun found when searching Wilkins' vehicle need not be suppressed because it was not "derivative of an illegality," i.e., it was not "fruit of the poisonous tree." *Strieff*, 579 US at 237-238.

Importantly, this Court has described the inquiry at issue as follows:

> We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. [*People v Mahdi*, 317 Mich App

---

[14] The record supports that this admission occurred without much if any delay once backup arrived, so we reject any *Terry*/*Rodriguez* violation concerning this questioning and the passenger's admission. See *Rodriguez*, 575 US at 355.

446, 471; 894 NW2d 732 (2016) (internal quotations omitted), quoting *Wong Sun v United States*, 371 US 471, 487-488; 83 S Ct 407; 9 L Ed 2d 441 (1963).]

See also *People v Coomer*, 245 Mich App 206, 223; 627 NW2d 612 (2001) (describing need for "a causal connection" between the illegality and the evidence at issue).

As discussed, Trooper Tomkins exceeded the permissible scope of *Terry* by preforming a pat-down search unjustified by any concerns for officer safety. But the recovered weapon was not discovered by police exploiting the illegal pat-down, nor were the two searches causally connected. Indeed, the pat-down did not reveal any evidence whatsoever. Nor is there any indication in the record that the initial pat-down in any way opened the door for the later vehicle search, which was justified as explained earlier. And the vehicle search notably occurred only after the passenger freely admitted that marijuana was present. Given these facts, we conclude that the vehicle search was sufficiently distinguishable from the pat-down such as to purge any taint from the initial illegality.

IV. CONCLUSION

Affirmed. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young

-10-